UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
MELVIN DAVIS,

                              Plaintiff,

    – against –

STATE OF NEW YORK DEPARTMENT
OF CORRECTIONS, CORRECTION OFFICER
KEITH CANFIELD and CORRECTION OFFICER
JAMES B. MCANNEY,

                              Defendants.

-------------------------------------------------------------------------x

No. 15-CV-4270 (CS)

**OPINION & ORDER**

Appearances:

Howard R. Birnbach
Great Neck, New York
*Counsel for Plaintiff*

Steven N. Schulman
Assistant Attorney General
Office of the Attorney General of the State of New York
New York, New York
*Counsel for Defendants*

Seibel, J.

      Before the Court is Defendants' motion for summary judgment. For the reasons stated below, the motion is GRANTED.

1

I. **BACKGROUND**

A. Facts[1]

Plaintiff Melvin Davis, an African-American man, has been employed by the New York State Department of Corrections and Community Supervision ("DOCCS") since 2008 as a correction officer ("CO") at Fishkill Correctional Facility ("Fishkill"). (P's 56.1 Resp. ¶¶ 1, 5.)[2] DOCCS is an agency of the State of New York that administers the State's correctional facilities, including Fishkill. (*Id.* ¶ 2.) Defendant COs Keith Canfield and James McAnney were at all relevant times employed by DOCCS at Fishkill – McAnney since 1989 and Canfield since 1998. (*Id.* ¶¶ 3, 4.)

In the summer of 2013, Plaintiff had been assigned for at least four years to Housing Unit A-West, as the only CO for the overnight shift from 10:30 p.m. to 6:30 a.m. (*Id.* ¶¶ 8, 14.) During the summer of 2013, Canfield and McAnney were also both assigned to Housing Unit A-West, as the only two COs for the morning shift from 6:30 a.m. to 2:30 p.m. (*Id.* ¶¶ 9, 10, 14.) Canfield and McAnney would relieve Plaintiff from his shift each day. (*Id.* ¶ 14.) Canfield and McAnney did not outrank Plaintiff, and had no supervisory control over him. (*Id.* ¶ 11.)

Plaintiff met McAnney around April 2013, when McAnney first transferred to Housing Unit A-West. (*See id.* ¶ 12.) Prior to the incident in question, Plaintiff did not have any problems with McAnney, who "seemed to be a nice guy." (*Id.* ¶ 13.) Prior to the incident, Plaintiff had known Canfield for about four and a half years, (*id.* ¶ 14), and had never filed a complaint against Canfield during that time, (*id.* ¶ 15).

---

[1] The facts are undisputed unless otherwise noted, and are taken from the parties' Local Rule 56.1 submissions unless otherwise noted.

[2] "P's 56.1 Resp." refers to Plaintiff's Local Rule 56.1 Response to Defendants' Statement of Material Facts that Are Not in Dispute. (Doc. 44.)

On July 5, 2013, McAnney and Canfield were in Housing Unit A-West's "back room," which is a room behind the officer's station that contains lockers for some of the COs and a table where COs often eat meals. (*Id.* ¶ 16.) McAnney was eating his lunch at the table. (*Id.*) Plaintiff was not present. (*Id.*) McAnney had brought cookies to work in a clear sandwich bag that was reusable by virtue of plastic ridges at the opening that, when pressed or zipped together, sealed the bag. (*Id.* ¶ 17.)[3] As Canfield was on a diet, McAnney teased him by offering him cookies, which Canfield declined. (*Id.* ¶ 18.) Shortly thereafter, McAnney was called out of the room, but left the cookie bag. (*Id.* ¶ 19.)

As a practical joke, Canfield poked a hole below the bag's zipper and poked a piece of pre-cut packing twine through the hole. (*Id.*) Canfield tied the twine in a knot around the bag's zipper and looped the twine over a pipe in the ceiling, which left the bag containing the cookies hanging from the ceiling pipe. (*Id.*) McAnney returned to the room and asked for his cookies, at which point Canfield told him to find them. (*Id.* ¶ 20.) After looking for the cookie bag, McAnney saw it hanging from the ceiling pipe and climbed a chair to reach and grab it. (*Id.*) McAnney ripped the bag apart, taking with him the part of the bag containing the cookies and leaving a remnant of the bag and its zipper attached by the twine to the ceiling pipe. (*Id.*)

---

[3] Plaintiff responds to this and many other statements contained in Defendants' 56.1 statement with the same long quote from Plaintiff's testimony at his deposition. In many instances the quote does not dispute the specific fact Defendants assert is undisputed, and in some the quote does not even relate to the same subject matter. In both cases, I deem Defendants' asserted facts, if properly supported, to be undisputed for the purposes of this motion. *See* Fed. R. Civ. P. 56(e)(2); *Peters v. Mount Sinai Hosp.*, No. 08-CV-7250, 2010 WL 1372686, at *4 (S.D.N.Y. Mar. 30, 2010) (deeming undisputed Defendants' asserted facts where Plaintiff offered only formulaic recitation of unrelated facts in her 56.1 response). Plaintiff also purports to dispute certain facts because he "was not present at th[e] alleged conversation," (*e.g.*, P's 56.1 Resp. ¶ 18), or because he "lacks . . . personal knowledge" sufficient to respond, (*e.g.*, *id.* ¶¶ 29, 30). Plaintiff had the opportunity to take discovery as to any facts of which he did not have personal knowledge, and again, any properly supported facts he fails to properly address in his 56.1 response I deem undisputed for purposes of the instant motion. *See Gadsden v. Jones Lange Lasalle Ams., Inc.*, 210 F. Supp. 2d 430, 438 (S.D.N.Y. 2002) ("Courts in this circuit have not hesitated to deem admitted the facts in a movant's Local Civil Rule 56.1 Statement that have not been controverted by a Local Civil Rule 56.1 statement from the nonmoving party.").

Nine days later, on July 14, 2013, Plaintiff was working his usual shift. (*Id.* ¶ 21.) At approximately 5:45 a.m., Plaintiff was in the back room. (*Id.*) While reaching for a box of pretzels he kept on top of one of the lockers, Plaintiff noticed the bag and twine remnant hanging from the ceiling pipe. (*Id.*) Plaintiff testified at his deposition that when he observed the baggie tied to the ceiling, it was twenty to twenty-four inches long and "had baggy arms on it" as well as "a head." (*Id.*) Plaintiff also testified that this angered him because "the first thing I thought of was somebody being lynched or something." (*Id.*) Plaintiff removed the bag remnant and twine from the ceiling pipe, (*id.* ¶ 22; Doc. 40 Ex. C ("P's Dep."), at 108), and placed it in his pocket, (*see* P's 56.1 Resp. ¶¶ 22, 26).

Shortly thereafter, McAnney arrived at the unit to relieve Plaintiff from his shift, (P's 56.1 Resp. ¶ 23), but Canfield had the day off, (*id.* ¶ 34). Without knowing who had been involved, (*id.* ¶ 24), Plaintiff gave McAnney the bag remnant and twine and asked him what it was, (*see id.* ¶¶ 23, 24, 26; P's Dep. 108). McAnney informed Plaintiff that Canfield had tied the bag of cookies to the ceiling pipe to play a prank on McAnney. (P's 56.1 Resp. ¶ 25; Doc. 39 ("McAnney Decl.") ¶ 9.) McAnney placed the bag remnant and twine in the trash. (P's 56.1 Resp. ¶ 27.) Plaintiff never discussed the incident with Canfield. (*Id.* ¶ 37.)

Plaintiff then went to complain to Lieutenant Witold Suski, the watch commander, who asked Plaintiff to draft a memorandum about the incident. (*Id.* ¶ 28.) Plaintiff wrote the requested memo and left the facility. (*Id.* ¶ 32.) Lt. Suski asked Sergeant Shawn Barto to investigate the matter. (*Id.* ¶ 28.)[4] Sgt. Barto then went to the back room of Housing Unit A-West to retrieve the bag remnant and twine. (*Id.* ¶ 29.) There, Sgt. Barto told McAnney that Plaintiff had made a complaint about the bag remnant and twine. (*Id.*) McAnney retrieved the

---

[4] Plaintiff never had any issues with either Lt. Suski or Sgt. Barto before this incident. (*Id.* ¶ 31.)

4

object from the trash and gave it to Sgt. Barto. (*Id.*) At Lt. Suski's direction, Sgt. Barto took pictures of the bag remnant and twine. (*Id.* ¶ 30.) Sgt. Barto asked McAnney to draft a memorandum responding to Plaintiff's complaint, which McAnney wrote on July 14, 2013. (*Id.* ¶ 33.) In a memorandum to Lt. Suski, Sgt. Barto concluded that the incident was "just a harmless prank played on one officer [CO McAnney] by another [CO Canfield] with no malicious intent." (*Id.* ¶ 35 (alterations in original); Doc. 40 Ex. F, at 33.) When Canfield came back to work the next day, July 15, 2013, he was also asked to write a memorandum in response to Plaintiff's complaint. (P's 56.1 Resp. ¶ 36.)

Neither McAnney nor Canfield have ever made any race-based remarks or comments to or about Plaintiff. (*Id.* ¶¶ 38, 39.) In fact, no one at Fishkill has ever made any racist or discriminatory remarks to Plaintiff. (*Id.* ¶ 51.) After July 14, 2013, Plaintiff never had any further problems with McAnney or Canfield. (*Id.* ¶ 40.) Apart from the July 14, 2013 complaint, Plaintiff never submitted a complaint about discrimination to DOCCS. (*Id.* ¶ 50.) Nor has Plaintiff submitted any labor grievances. (*Id.*)

On April 22, 2014, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that Defendants had violated his civil rights by constructing a dummy in a noose and hanging it from a ceiling pipe in the back room. (*Id.* ¶ 41.) McAnney and Canfield were asked by DOCCS to write memoranda in response to Plaintiff's EEOC complaint, which they did on August 18, 2014. (*Id.* ¶ 42.)

On November 4, 2014, at around 7:30 a.m., Plaintiff found a toy black rat with a noose tied around it on the outside staircase leading to his apartment. (*Id.* ¶ 43.) Plaintiff reported the toy rat and noose to his landlord and his psychologist, but not to the police or to anyone at DOCCS. (*Id.* ¶ 44.) In fact, Plaintiff never discussed the toy rat and noose with anyone at work

or otherwise reported it to DOCCS. (*Id.* ¶ 45; P's Dep. 95, 96.) Plaintiff did not know who placed the toy rat and noose on the outside staircase of his apartment. (P's 56.1 Resp. ¶ 46.) McAnney and Canfield both state that they were not directly or indirectly involved in placing the toy rat and noose at Plaintiff's apartment, and did not learn about the incident until Plaintiff initiated the instant lawsuit. (*Id.* ¶¶ 47, 48.)

Plaintiff testified at his deposition in March 2016 that when a group of employees came to Fishkill from Arthur Kill Correctional Facility "about four years ago," tensions arose between the two groups, including graffiti in one of the Fishkill restrooms to the effect of "Arthur Kill niggers go home" and "Arthur Kill, black monkey." (*See* Doc. 46 Ex. C, at 151-54.) Plaintiff testified that he saw the N word "three, four years ago on numerous occasions" on the walls of the correction officers' bathroom, that the graffiti would then be covered up with paint, but "then somebody would come, like new people, they would come and then rewrite [the graffiti] there." (*Id.* at 150-51.) Plaintiff did not identify who painted the graffiti. Plaintiff testified that at some unspecified time "in the last two or three years" another CO complained to their lieutenant, who had the walls painted black, (*see id.* at 151-52), "within 24 hours," (*id.* at 154).[5]

On March 10, 2015, the EEOC issued a decision, stating that it was unable to conclude that DOCCS had violated federal law. (P's 56.1 Resp. ¶ 49.) On the same day, the EEOC issued Plaintiff a right to sue letter. (*Id.*)

---

[5] In his affidavit, Plaintiff states, "The graffiti languished there for years with no attempt to remove it . . . ." (Doc. 46 ¶ 13.) Plaintiff testified at his deposition, however, that the graffiti would be painted over before it was rewritten and that eventually the stalls were painted black to prevent graffiti. (*See id.* Ex. C, at 151.) I do not accept facts included in Plaintiff's affidavit accompanying his summary judgment opposition where those facts are contradicted by his prior deposition testimony. *See Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001); *Vos v. Lee*, No. 07-CV-804, 2009 WL 10640615, at *7 (E.D.N.Y. Dec. 23, 2009) (collecting cases).

## B. Procedural History

Plaintiff initiated this action by filing a complaint on June 3, 2015, which alleged claims for hostile work environment under Title VII of the Civil Rights Act of 1964 against DOCCS and under 42 U.S.C. § 1983 against Canfield and McAnney, and for retaliation under Title VII against DOCCS. (*See* Doc. 1 ¶¶ 13-19.) Following discovery, Defendants filed the instant motion on February 10, 2017. (Doc. 36.)

## II. DISCUSSION

### A. Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to "present evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some

7

metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and he "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). Where an affidavit is used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

**B. Hostile Work Environment**

The standard for hostile work environment claims is the same whether brought under Title VII or § 1983, so I will analyze Plaintiff's claims against all Defendants together. *See Smith v. Town of Hempstead Dep't of Sanitation Sanitary Dist. No. 2*, 798 F. Supp. 2d 443, 451 (E.D.N.Y. 2011) ("The standard for showing a hostile work environment under Title VII, Section 1981, Section 1983, and the New York State Human Rights Law is essentially the same.").

8

> [T]o establish a hostile work environment claim under Title VII, a plaintiff must produce enough evidence to show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. In considering whether a plaintiff has met this burden, courts should examine the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's job performance.

*Rivera v. Rochester Genesee Regional Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) (citations, alterations, and internal quotation marks omitted). The "test has objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (internal quotation marks omitted). "A plaintiff must also demonstrate that []he was subjected to the hostility because of h[is] membership in a protected class." *Brennan v. Metro Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999).

"To decide whether the [hostile work environment] threshold has been reached, courts examine the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse." *Alfano*, 294 F.3d at 374. "Pervasive" harassment is harassment that is "more than episodic," and instead "continuous and concerted." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003) (internal quotation marks omitted). "The environment," however, "need not be unendurable or intolerable." *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004) (internal quotation marks omitted). "[T]he fact that the law requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious cases." *Id.* (internal quotation marks omitted). "A single incident in which the conduct alleged crosses the line from mere insults to physical force . . . is

9

more likely to support a hostile work environment claim." *Cruz v. Liberatore*, 582 F. Supp. 2d 508, 519 (S.D.N.Y. 2008) (citations omitted). But the Second Circuit has not ruled out the possibility that a "one-time use of a severe racial slur could, by itself, support a hostile work environment claim when evaluated in the cumulative reality of the work environment." *Daniel v. T&M Protection Res., LLC*, No. 15-560, 2017 WL 1476598, at *1 (2d Cir. Apr. 25, 2017) (summary order).

Plaintiff identifies three incidents he claims created a hostile work environment: the bag remnant and twine attached to the ceiling pipe, the toy rat and noose outside his apartment, and racist graffiti in his workplace restroom.

First, Plaintiff has not produced any evidence connecting the toy rat and noose to his work environment or any of the Defendants. Plaintiff testified that he does not know who placed the toy rat on his staircase. (P's 56.1 Resp. ¶ 46.) Both Canfield and McAnney stated that they had no involvement, and were not aware of the incident until receiving the complaint in this lawsuit, (i*d.* ¶¶ 47-48; McAnney Decl. ¶ 18; Doc. 38 ("Canfield Decl.") ¶ 17), and there is no evidence to the contrary. Plaintiff's belief that McAnney and Canfield were somehow involved, without citation to evidence in the record, is insufficient to create a triable issue of fact. *See Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) ("[I]n the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment."); *Fadia v. New Horizon Hosp.*, 743 F. Supp. 2d 158, 168 (W.D.N.Y. 2010) ("Plaintiff's subject[ive] belief that he was discriminated against is insufficient to create a triable issue of fact.").

Plaintiff did not alert anyone at DOCCS about the toy rat incident. (P's 56.1 Resp. ¶¶ 44, 45.) Absent any connection to Plaintiff's coworkers, any indication Plaintiff made anyone at

DOCCS aware of the incident, or any suggestion that DOCCS should have known about the incident, it cannot contribute to a hostile work environment claim against DOCCS under Title VII. *See Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 766 (2d Cir. 1998) (employer not liable for coworker's harassing behavior "unless the employer either provided no reasonable avenue of complaint or knew of the harassment but did nothing about it"), *abrogated in part on other grounds*, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002); *Wahlstrom v. Metro-N. Commuter R.R.*, 89 F. Supp. 2d 506, 522 (S.D.N.Y. 2000) ("When a co-worker, as opposed to a supervisor, is alleged to have engaged in . . . harassment, the employer will generally not be liable unless the employer either provided no reasonable avenue of complaint or knew of the harassment but did nothing about it.") (internal quotation marks omitted). And absent any evidence that McAnney or Canfield were personally involved in the incident, they cannot be held liable under § 1983. *See Rodriguez v. City of N.Y.*, 644 F. Supp. 2d 168, 199 (E.D.N.Y. 2008) ("[A] plaintiff must demonstrate a defendant's personal involvement in the alleged discrimination in order to establish a claim against such defendant in his individual capacity."). Although one might infer that whoever placed the rat near Plaintiff's home was resentful of his having made an issue of the noose/bag remnant incident, on this record that act cannot be ascribed to any of the Defendants.

Second, I will assume that placement of a noose in the workplace can be "sufficient in itself to allow a finder of fact to conclude that the plaintiff was subjected to a hostile work environment." *Brown v. Orange & Rockland Utilities, Inc.*, 594 F. Supp. 2d 382, 392 (S.D.N.Y. 2009) (collecting cases); *see Smith*, 798 F. Supp. 2d at 453 (public display of noose in workplace created genuine issue of material fact as to whether hostile work environment existed); *Williams v. N.Y.C. Hous. Auth.*, 154 F. Supp. 2d 820, 826 (S.D.N.Y. 2001) (denying motion to dismiss

11

hostile work environment claim based on single display of noose).[6] In contrast to those cases, however, the object in question here is, on the undisputed facts, not a noose.

Plaintiff testified that he perceived the bag remnant and twine to be a hanging body, (P's Dep. 29), which testimony could allow a reasonable jury to conclude that he (at least for the moment) subjectively found the workplace incident to be hostile or abusive. But Plaintiff cannot establish the objective prong of the inquiry – that is, that a reasonable person would regard the bag remnant and twine to be a noose. Having examined photographs of the bag remnant and twine, (Doc. 40 Ex. D), I find that no reasonable person would conclude the objects to be anything so violent or racially charged as a noose. While they might on a superficial first glance together bear some resemblance to a stick figure, a second glance would reveal that they are just as Defendants describe – the torn zipper of a resealable plastic bag attached to a piece of twine. Although at this stage I must view the facts in the light most favorable to Plaintiff, I am not required to "credit assertions that are wholly contradicted by photographic evidence in the record." *Matteo v. Kohl's Dep't Stores, Inc.*, No. 09-CV-7830, 2012 WL 760317, at *7 (S.D.N.Y. Mar. 6, 2012), *aff'd*, 533 F. App'x 1 (2d Cir. 2013); *see Scott v. Harris*, 550 U.S. 372, 380-81 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). There is simply nothing that resembles a noose. A reasonable person therefore would not have found the bag remnant and twine to be racially hostile or abusive.

---

[6] Other courts have found placement of a noose to be insufficient to defeat a motion for summary judgment. *See, e.g.*, *Mays v. Town of Hempstead*, No. 10-CV-3998, 2012 WL 5866230, at *6-7 (E.D.N.Y. Nov. 16, 2012); *McCoy v. City of N.Y.*, 131 F. Supp. 2d 363, 374-75 (S.D.N.Y. 2001). Given "this nation's opprobrious legacy of violence against African-Americans" and that the noose "is itself an instrument of [that] violence," *Williams*, 154 F. Supp. 2d at 824, I decline to, as Defendants urge, say that the single display of a noose is as a matter of law insufficient to give rise to a hostile work environment, *cf. Daniel*, 2017 WL 1476598, at *1 ("[T]he one-time use of a severe racial slur could, by itself, support a hostile work environment claim . . . .").

As to the racist graffiti, despicable as it is, there is no evidence in the record that McAnney or Canfield were personally involved, so they cannot be held liable under § 1983. *See Rodriguez*, 644 F. Supp. 2d at 199. There is also no evidence that any of Plaintiff's supervisors were involved, so for DOCCS to be held liable Plaintiff would need to show either that DOCCS "provided no reasonable avenue of complaint or knew of the [graffiti] but did nothing about it." *Quinn*, 159 F.3d at 766. Plaintiff cannot create a fact issue on either prong. First, on the record evidence DOCCS provided a reasonable avenue of complaint, at the very least informally – Plaintiff testified that one of his coworkers complained to a supervisor about the graffiti, after which the bathroom walls were painted black, presumably to prevent further graffiti. (Doc. 46 Ex. C, at 151-52.) Plaintiff offers no reason why this avenue of complaint was unreasonable. Second, by Plaintiff's own testimony, DOCCS responded to the racist graffiti by painting over it each time. (*See id.* at 151.) After another CO complained to his supervisor, DOCCS had the walls painted black "within 24 hours." (*Id.* at 153-54.) "In the context of racist graffiti, when graffiti is reported to the employer and the employer promptly removes the offending language, the employer has taken appropriate remedial action." *EEOC v. Rock-Tenn Servs. Co.*, 901 F. Supp. 2d 810, 827 (N.D. Tex. 2012) (citing *Pedigo v. Nat'l Cart Co.*, 95 F. App'x 847, 848 (8th Cir. 2004)). Here, the record establishes that DOCCS would paint over racist graffiti as it appeared, and when it became clear that this was insufficient to solve the problem, it painted the walls black within one day of receiving a complaint. Plaintiff identified no instances of racist graffiti after DOCCS had the walls painted black in 2013 or 2014. Thus this is not a case where "the graffiti remain[ed] over an extended period of time, or the employer's response [wa]s repeatedly ineffective in eliminating the racist graffiti." *Id.* Plaintiff has failed to create a triable issue of fact as to the reasonableness of DOCCS's response to the racist graffiti, and no

reasonable jury could find it liable. *See Rios v. Buffalo & Fort Erie Pub. Bridge Auth.*, 326 F. App'x 612, 614 (2d Cir. 2009) (summary order) (employers' removal of offensive graffiti contributed to its reasonable response); *Holder v. Honda Mfg. of Ind. LLC*, No. 14-CV-134, 2015 WL 4425650, at *8 (S.D. Ind. July 17, 2015) (employer was reasonable in promptly investigating and removing offensive graffiti from bathroom); *Tressler v. Amtrak*, No. 09-CV-2027, 2012 U.S. Dist. LEXIS 170304, at *19-20 (D.D.C. Nov. 30, 2012) (employer "took amply reasonable steps to address the graffiti – both by removing and investigating any graffiti that was discovered, and also by striving to prevent the appearance of any graffiti in the first place").

"[L]ooking at all the circumstances," *Scott*, 510 U.S. at 23, the three incidents of which Plaintiff complains together are insufficiently severe or pervasive to rise to the level of a hostile work environment. The bag remnant and twine would not be understood by a reasonable person to be racially hostile. The individual Defendants were not involved in the toy rat incident or the racist graffiti, and neither can be imputed to DOCCS. And even if the racist graffiti could be properly attributed to DOCCS, it, without more, does not rise to the level of a pervasive and abusive work environment. *See Caver v. City of Trenton*, 420 F.3d 243, 263 (3d Cir. 2005) ("[I]nappropriate racist comments, graffiti, and flyers . . . was insufficient without more to establish a hostile work environment."); *Brooks v. Firestone Polymers, LLC*, 70 F. Supp. 3d 816, 859-60 (E.D. Tex. 2014) (racist bathroom graffiti that included black faces, slurs, and derogatory comments about President Obama was insufficient to create a hostile work environment where drawings were "confined to a single restroom, involved no physical threat, and were not directed at" plaintiff), *aff'd*, 640 F. App'x 393 (5th Cir. 2016) (summary order); *Wilburn v. Eastman Kodak Corp.*, 670 F. Supp. 2d 192, 196 (W.D.N.Y. 2009) (graffiti in bathrooms and elevators, some of which was "racist and patently offensive, in the context of all the evidence, . . . was not

so ubiquitous, severe or pervasive as to create an actionable hostile work environment"); *see also Woodland v. Joseph T. Ryerson & Son, Inc.*, 302 F.3d 839, 843-44 (8th Cir. 2002) (six racist comments, dissemination of racist and homophobic poem, and drawings of "KKK," a swastika, and a hooded figure in restroom were insufficient to create a hostile work environment).[7]

Thus, on the undisputed facts, Plaintiff's hostile work environment claim must fail.

## C. Retaliation

On a motion for summary judgment, the Plaintiff must make out a *prima facie* case of retaliation. *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 216 (2d Cir. 2001); *Clemente v. N.Y. State Div. of Parole*, 684 F. Supp. 2d 366, 374 (S.D.N.Y. 2010). If the plaintiff meets this burden, the defendant must offer a legitimate non-retaliatory reason for its actions. *Cifra*, 252 F.3d at 216. If the defendant puts forth such a reason, the plaintiff must demonstrate that there is sufficient evidence for a reasonable juror to find that the reason offered by the defendant is "merely a pretext" for retaliation. *Id.*

To establish a *prima facie* case of retaliation, Plaintiff must show that: (1) he was engaged in activity protected under anti-discrimination statutes; (2) Defendants were aware of

---

[7] Plaintiff makes passing reference in his brief to another noose incident at Fishkill, but does not cite to any evidence or discuss any details of this alleged incident. (Doc. 43 at 2,3.) In his affidavit, Plaintiff refers to Canfield's deposition testimony about a noose hung in a work vehicle that Canfield had "heard about . . . through the grapevine." (Doc. 46 ¶ 23.) Because the only evidence of this incident is hearsay, it must be disregarded on summary judgment. *See Spiegel v. Schulmann*, 604 F.3d 72, 81 (2d Cir. 2010); *Hollander v. Am-Cyanamid Co.*, 172 F.3d 192, 198 (2d Cir. 1999), *abrogated in part on other grounds*, *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000). Further, nowhere does Plaintiff suggest that he was aware of this incident until he read Canfield's testimony in this case. (*See* Doc. 46 ¶ 23 (describing this second noose incident as coming "to light during the litigation").) Accordingly, it cannot contribute to a hostile work environment because Plaintiff did not perceive it during his employment. *See Varughese v. Mt. Sinai Med. Ctr.*, No. 12-CV-8812, 2015 WL 1499618, at *61 (S.D.N.Y. Mar. 27, 2015) (plaintiff must at least be generally aware of comments for them to contribute to hostile work environment); *Cestone v. Gen. Cigar Holdings, Inc.*, No. 00-CV-3686, 2002 WL 424654, at *3 (S.D.N.Y. Mar. 18, 2002) (harassment of which plaintiff was unaware cannot support hostile work environment); *see also Schwapp*, 118 F.3d at 111 (error not to consider statements made outside plaintiff's presence because fact issues existed as to "[w]hether [plaintiff] was aware of them during his employment, and more significantly, whether in light of these incidents, the incidents [plaintiff] experienced more directly would reasonably be perceived, and were perceived, as hostile or abusive") (alteration and internal quotation marks omitted).

15

Plaintiff's participation in the protected activity; (3) Defendants took adverse action against Plaintiff; and (4) there is a causal connection between Plaintiff's protected activity and the adverse action taken by Defendants. *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010). "Title VII is not a general 'bad acts' statute," *Wimmer v. Suffolk Cty. Police Dep't*, 176 F.3d 125, 135 (2d Cir. 1999) (internal quotation marks omitted), and "[p]etty slights or minor annoyances that often take place at work and that all employees experience do not constitute actionable retaliation," *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) (internal quotation marks omitted).

Here, Defendants argue that Plaintiff cannot establish that he was subjected to an adverse employment action. "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which . . . means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted). To establish, as Plaintiff appears to contend here,

> that a retaliatory hostile work environment constitutes a materially adverse change that might dissuade a reasonable worker from reporting activity prohibited by Title VII, a plaintiff must satisfy the same standard that governs hostile workplace claims by showing that the incidents of harassment following complaints were sufficiently continuous and concerted to have altered the conditions of his employment.

*Rasco v. BT Radianz*, No. 05-CV-7147, 2009 WL 690986, at *15 (S.D.N.Y. Mar. 17, 2009); *see Richardson v. N.Y. State Dep't of Correctional Serv.*, 180 F.3d 426, 446 (2d Cir. 1999) ("[U]nchecked retaliatory co-worker harassment, if sufficiently severe, may constitute adverse employment action so as to satisfy the second prong of the retaliation *prima facie* case.").

Here, Plaintiff claims that the toy rat incident was retaliation for complaining about the bag remnant and twine. Assuming for the sake of argument that this one-time incident could be sufficiently severe – a dubious proposition – here, as discussed above, Plaintiff has failed to

16

establish that the toy rat incident was attributable to any Defendant. It thus cannot suffice as an adverse employment action for purposes of his retaliation claim, which must be dismissed.

## III. CONCLUSION

For the reasons stated above, Defendants' motion is GRANTED.[8] The Clerk of Court is directed to terminate the pending motion, (Doc. 36), and close the case.

**SO ORDERED.**

Dated: June 13, 2017
      White Plains, New York

*Cathy Seibel*
———————————————
      CATHY SEIBEL, U.S.D.J.

---

[8] In light of my disposition, I need not address Defendants' other arguments, many of which appear meritorious.